IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CINDY A. GRIEGO,

    Plaintiff,

v.                                                      CV 10-0974 WPL

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    In 2007, Cindy A. Griego protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Administrative Record ("AR") 141-51.) The applications were denied at the initial and reconsideration levels, and Griego requested a hearing before an administrative law judge ("ALJ"). (AR 87-93, 98-105.) The ALJ denied the application in a decision upheld by the Appeals Council. (AR 1-24.) Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. The case is before me now on Griego's Motion to Reverse or Remand (Doc. 16), the Response filed by the Commissioner (Doc. 18), and Griego's Reply (Doc. 19). Pursuant to 28 U.S.C § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. After having read and carefully considered the entire record, I find that the Commissioner failed to include an identified impairment in the residual functional capacity ("RFC") finding. Accordingly, Griego's Motion will be granted and the case will be remanded.

**STANDARD OF REVIEW**

    In reviewing the ALJ's decision, I must determine whether it is supported by substantial

evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Id.* I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.*

## SEQUENTIAL EVALUATION PROCESS

The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520, 416.920. At the first four steps, the claimant must show that she is not working in substantial gainful activity, that she has an impairment that is severe enough to significantly limit her ability to do basic work activities, and either that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or that she is unable to perform the work she has done in the past. At the fifth step, the Commissioner must show that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Griego filed applications for SSI and DIB on October 15, 2007, alleging a disability onset date of January 1, 2005.[1] (AR 11-12, 142, 144.) The SSA denied her applications at both the initial

---

[1] In what appears to be an attempt to avoid the negative inference that can be drawn from the four physical therapy appointments that Griego missed in the summer of 2005, she attempts to amend her onset date from January 1, 2005 to May 1, 2006. (Doc. 19 at 3.) She claims that such an amendment will clarify the ALJ's incorrect statement that her alleged onset date was September 1, 2005 rather than January 1, 2005.

and reconsideration levels, and, on August 15, 2008, she filed a request for a hearing before an ALJ. (*Id.*) On November 18, 2009, ALJ Barry Robinson held a hearing on Griego's applications for benefits. (*Id.*) Griego and a vocational expert ("VE") testified at the hearing, and Griego was represented by counsel. (*Id.*) The ALJ denied her claim for benefits on April 2, 2010 (AR 21), and the Appeals Council denied her subsequent request for review on August 25, 2010. (AR 1.)

Griego originally asserted disability based on a blood clot in her right arm (deep vein thrombosis) and back pain. (AR 160.) She later amended her report to include worsening arm and neck pain as well as depression. (AR 172.) The medical records demonstrate that Griego has been treated for her alleged impairments in the following manner:

1) Initially, Griego was seeing Dr. Brian P. Delahoussaye for a right shoulder injury suffered in 1995 while moving boxes as a duty of her previous job. Though prior to 2005, it is significant that Dr. Delahoussaye determined that Griego had reached maximum medical improvement from the arm injury on November 4, 1999 and rated her whole person impairment as 9%. (AR 448.) He concluded that she could continue to work and function in the light duty area. (AR 445.)

2) Greigo has maintained appointments at Concentra Medical Center for arm and shoulder treatment at least every six months since 2003 through at least 2009. Concentra diagnosed Griego with chronic cervical thoracic myofascial pain syndrome, cervical disk degeneration, and chronic right shoulder pain. (AR 260, 284-85.) During her visits to Concentra, Griego consistently reported throbbing pain and stiffness radiating from her right shoulder into her arm and neck, tingling and

---

(*Id.*; *see also* AR 11.) However, Griego asserts no error based on the misstated onset date, and no error in fact occurred because the ALJ considered her medical reports from as early as January of 2005 in rendering his decision. Allowing such an amendment at this point in the proceedings would only serve to generate confusion, since the ALJ considered all records from 2005 and early 2006. There is no basis for Griego to amend her onset date and no amendment will be permitted.

numbness in her neck and arm, leg spasms, interrupted sleeping. (AR 259, 265, 284, 342, 347) She has been prescribed pain medicines, muscle relaxers, and medicine to help her sleep. (AR 260, 265-66, 285, 342-43, 348.) She has also received additional treatment including myofascial therapy. (AR 257.) When she first began with Concentra, she requested physical therapy and was prescribed therapy in July of 2005. (AR 387.) However, she missed or cancelled four appointments in August of 2005. (AR 384.) In October of 2005, Concentra placed her on modified activity, defined as no lifting over ten pounds and no pushing or pulling over ten pounds of force. (AR 385.) She remained on modified activity at least until February of 2007. (AR 260.)

     3) Griego was hospitalized for back pain from September to November of 2007 at Socorro General Hospital, Presbyterian Hospital and Presbyterian Anna Kaseman Hospital. (AR 163-64.) Only the records from Presbyterian Hospital are included in the record, and Griego was a patient there from September 21, 2007 through October 10, 2007. (AR 231.) Griego's diagnoses that are relevant to these claims were epidural abscess, left psoas fluid collection, and chronic pain syndrome related to a right shoulder injury. (AR 231.) During this hospitalization, Griego had two MRIs of the spine, one on September 22 and one on September 30. (AR 239.) The consulting doctor, Dr. Andrew Metzger, reviewed the MRIs and found excess material around the vertebrae of her lower spine causing "compression of the thecal sac." (AR 239.) He also found evidence of diskitis, early osteomyelitis, and loss of disk height in the lower back. (*Id.*) Dr. Metzger performed a surgical debridement operation on October 1, 2007, which included "L4-S1 laminectomy, debridement of the epidural space, [and] L5-S1 diskectomy/debridement." (AR 243.)

     In addition to the treating source records, the SSA sent Griego for two disability determination examinations by medical consultants. The first was an RFC assessment on June 10,

2008 by Dr. Margaret E. Vining. (AR 314.) It is not clear whether this was based on an examination or a review of the records. Dr. Vining diagnosed Griego with a lower spinal laminectomy, chronic myofascial cervical pain, right shoulder pain and cervical disk degeneration. (AR 307.) She concluded that Griego's function is limited by her low back, chronic neck pain, and chronic right shoulder pain, but that it would be reasonable to expect her to work at a light level with postural and environmental restrictions twelve months from the date of her hospitalization. (AR 309.)

The second examination was a psychological examination completed on July 11, 2008 with Dr. Louis Wynne, Ph.D. (AR 315.) He found that Griego had difficulty carrying out a written three-part set of directions but that she is of average or above-average intelligence. (AR 315-16.) He concluded that "there is no reason to suspect malingering or dissimulation." (AR 317.) He found that Griego "could not remember and carry out basic written instructions, but her concentration and ability to persist at simple work tasks is unimpaired. She could interact well with the general public, and she would have no difficulty interacting with her coworkers and her supervisors. She could adapt to changes in the workplace, recognize hazards, and manage her own benefit payments." (AR 317.) He diagnosed her on axis 1 with alcohol dependence in remission, cannabis abuse in remission, and mood disorder/depression due to severe chronic illness. (AR 317.) He rated her as a 50 on the Global Assessment Functioning Scale (GAF), which is a 1-100 scale rating a person's ability to cope with normal life. (AR 318.) Notably, Griego drove herself to Dr. Wynne's office and was unaccompanied throughout the examination. (AR 315.)

Also in the medical records was a mental RFC completed by medical consultant W. Logan on July 28, 2008. (AR 323.) Based on the records in Griego's file, Logan concluded that she has moderate limitations in understanding and remembering detailed instructions, maintaining attention

and concentration for an extended period, performing activities within a schedule, maintaining regular attendance, being punctual, interacting appropriately with the general public, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently. (AR 321-22.) He further found her markedly limited in her ability to carry out detailed instructions. (AR 321.) He concluded that she "retains the capacity to perform simple work related tasks in a routine work environment." (AR 323.)

During the ALJ hearing, Griego testified regarding her medical problems. Griego contended that her ability to lift (restricted to twenty pounds at her previous job) had gotten worse and that "standing/sitting for 30 minutes is very troublesome" because of sciatica and nerve damage in her left leg. (AR 40-41, 46-47.) She described that her shoulder condition had worsened since 2006 because the pain now throbs and radiates into her neck and left side, though she was not on pain medication other than over-the-counter Aleve. (AR 42-43, 45.) Griego seemed able to move the arm around completely and could pick up small objects with the hand, but stated that her arm throbs and is painful at a eight and a half or nine out of ten. (AR 44-45.) She said she would be able to lift five pounds with her right arm and hand and that she could only write half a page with her right hand. (AR 45, 60.)

In terms of daily activities, Griego testified that sitting starts to bother her right shoulder and low back after thirty minutes or an hour. (AR 53.) She said she could sit for about an hour before having to get up and take at least a short walk or stand and lean against a wall. (*Id.*) She leans against a wall in a corner for ten to fifteen minutes between five and seven times each day. (AR 54.) She finds showering exhausting because she has a lot of hair and it is hard to brush it out using her right arm. (AR 57.) Vacuuming and sweeping are very difficult for her, but she does cook and do

laundry. (AR 56.) Griego testified that she does not walk much, just from the house to the car, and she does not do regular grocery shopping although she does go in for "certain things, maybe, five, ten items at the most." (AR 52.) She stated that she can drive - that "it's bothersome" but, with an automatic, "I'm fine." (AR 49.) She babysits for four of her grandchildren every night for two hours, the youngest of whom is three years old. (AR 56.) Griego watches a lot of television and can sit through a half-hour program but has to get up during the commercials in an hour-long program. (AR 57-58.) She has trouble sleeping through the night and can sometimes sleep for two to three hours without interruption but then has to get up and walk around. (AR 59.) Griego also stated that she was looking for a part-time job, but she has been unable to find one in Socorro and would have to relocate. (AR 69.)

Griego's father also submitted a brief affidavit documenting his experience of her physical capabilities after the injury in 1995, dated November 16, 2009. (AR 190.) He stated that she was "very slow and weak" while working as a home health care provider for her cousin in 2004. (*Id.*) He also stated that Griego is able to work for him doing some light cleaning, including window washing and light vacuuming, whenever he has an open apartment for up to two to three hours a day. (*Id.*) He stated that she has to rest after an hour of cleaning. (*Id.*)

A vocational expert ("VE") also testified at the hearing. After being asked a hypothetical question assuming an individual of Griego's age with the same education, past work experience, and RFC as described by the ALJ, the VE testified that such an individual could work as a switchboard operator, a satellite instruction facilitator, or a security surveillance system monitor. (AR 72-75.)

Griego was forty-nine years old when the Commissioner issued his final decision. (AR 33-34, 141.) She went to college and received an associate's degree in business management prior to

her alleged onset date. (AR 34, 166.) She also received additional training in customer relations. (*Id.*) Her past relevant work includes employment as an administrative clerk and a home health worker. (AR 34, 72, 166.)

### ALJ AND APPEALS COUNCIL DECISIONS

In this case, the ALJ concluded at step five that Griego had not been under a disability since January of 2005, the date that she filed her applications for SSI and DIB. (AR 12.) The ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset date. (AR 13.) He further found that she exhibited severe impairments of status post laminectomy L4-5 and L5-S1, right shoulder injury, degenerative disk disease of the cervical spine, a mood disorder and depression. (AR 14.) At step three, he found that the impairments do not meet the listed impairments. (*Id.*) In discussing the listings, the ALJ stated, "In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties." (AR 15.)

The ALJ found that Griego had the RFC to perform sedentary work with the following restrictions:

> She can lift and carry with her right arm less than 10 pounds; she can stand/walk for up to 2 hours in a normal work day with normal breaks; she must have a sit/stand option at will; she can occasionally climb ramps, stairs, stoop, bend over, crouch; she can never climb ladders or ropes; she can never crawl; she can frequently balance; due to manipulation limitations due to cervical issues like right shoulder pain and decreased motion of her right arm she is limited to occasional reaching in all directions even overhead with the right arm. She can handle and finger less than occasionally with the right hand. Further, she must avoid concentrated exposure to extreme cold and damp environments. In a normal work day she can give attention and concentration up to 2 hours at a time with normal breaks. Thereafter, she can give additional attention and concentration. Also, she can understand, carry out, and remember routine repetitive instructions.

(AR 15.)

To make this determination, the ALJ explained that he relied on all symptoms to the extent to which they can be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence. (*Id.*) The ALJ thoroughly described Griego's medical history from January 21, 2005 through October 7, 2008, the opinions of her doctors, and the conclusions of the medical consultants. (AR 16-18.) He gave the consultants' opinions significant weight as to Griego's mental and physical RFC, but found her physical RFC more restrictive based on the testimony at the hearing. (AR 18-19.) He found her testimony aside from that relating to her right arm exaggerated and unsupported by medical evidence**.** (AR 19.) In support of that finding, the ALJ stated that Griego had a cane at the hearing that was not prescribed and that she did not require to walk, that she did not receive treatment for depression, that she was not taking narcotic pain medication, that she had not taken prescribed pain medication since March of 2009, that she was only taking over-the-counter Aleve, that her daily activities have been somewhat greater than reported, and that the record did not include opinions from treating or examining physicians as to Griego's disability. (*Id.*)

After his conclusions regarding her RFC, the ALJ found that Griego could not perform her past relevant work, based on testimony from the VE that her work was semi-skilled and performed at a medium level. (AR 19.) He considered her age, education and work experience and concluded that there were at least three jobs existing in significant numbers that Griego could perform even with her limitations based on the testimony of the VE. (AR 20-21.) Accordingly, he denied benefits.

## BURDEN OF PROOF

In describing the sequential evaluation process, the ALJ described the shift in the burden of proof at step five as follows:

> Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social

9

> Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

(AR 13.) Griego argues that the ALJ incorrectly stated the burden of proof, which she contends is troubling given that several decisions from this District have criticized this boilerplate recitation of the burden. (Doc. 16 at 17-18.)

The ALJ's statement of the shift in the burden is not fundamentally incorrect.[2] The claimant bears the burden of proving a disability within the meaning of the Social Security Act throughout the process. *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (citing 42 U.S.C. § 423(d)(5) (1988)). The burden of presenting evidence shifts to the Commissioner at step five because he must provide evidence demonstrating "that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] residual functional capacity and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). However, the Commissioner will apply the previously determined RFC at step five, and the Commissioner need not present further evidence about the claimant's RFC at this step. *Id.* In this case, the ALJ did acknowledge the shift in the burden and that the Commissioner is required to show that the claimant retains the functional capacity to do specific jobs. *See White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, this statement of the burden was not legal error necessitating remand.

Nonetheless, it would certainly be preferable for ALJs to acknowledge the extent of the burden shift in their description of the fifth step of the sequential evaluation. Once the claimant

---

[2] In fact, I have previously been confronted with this argument by the Martone Law Firm regarding the same language in the ALJ's opinion. *Romero v. Social Security Administration*, No. 10-cv-00580-WPL, Doc. 27, at 22 (D.N.M. May 23, 2011). I did not rule in their favor at that time, *see id.*, and so it seems that they overstate the authority condemning such language.

demonstrates that she cannot return to her past relevant work or if she has no past relevant work, she has established a *prima facie* case of disability. *Williams*, 844 F.2d at 751 (10th Cir. 2008). Thus, the claimant is not required to make any showing at step five. By including that information in the statement of the burden at step five, the boilerplate language used by the ALJs would comport more closely with the law.

## CREDIBILITY DETERMINATION

Griego requests that I find error in the ALJ's determination of her credibility regarding her subjective complaints of disabling pain. (Doc. 16 at 12.) "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). So long as the record contains substantial evidence to support the ALJ's determination, it will not be reversed. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (upholding the ALJ's credibility determination though he did not mention a claimant's testimony about side effects of her medications). The ALJ is not required to conduct "a formalistic factor-by-factor recitation of the evidence." *Qualls v. Astrue*, No. 10–6288, 2011 WL 2600546, at *3 (10th Cir. July 1, 2011) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). But he must give "specific reasons" for his findings, *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (citations and quotations omitted), that are "closely and affirmatively linked to substantial evidence." *Qualls*, 2011 WL 2600546, at *3 (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Such findings enable the court to meaningfully review the evidence considered by the ALJ in judging a claimant's credibility. *Hardman*, 362 F.3d at 679 (citing *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)).

The ALJ must follow three steps in analyzing a claimant's evidence of pain. First, he must determine whether the claimant established a pain-producing impairment with objective medical evidence. *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)). Next, he must consider whether a loose nexus between the impairment and the subjective allegations of pain exists. *Id.* Finally, he must evaluate whether, based on all of the evidence, the pain is actually disabling. *Id.* This third step is significant because "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (quoting *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986)) (alternations in original).

To determine the credibility of the claimant's testimony regarding pain, the ALJ should consider factors like:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson*, 987 F.2d at 1489 (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

Here, the factors considered by the ALJ included the claimant's past and current medications, the claimant's specific daily activities, his observations of her, her relationship with her witness, the absence of treating physician recommendations as to her abilities, and the consistency of her testimony and her witness's statement with the objective medical evidence. He did not, however, rely on any one factor, so all of these factors could properly be considered. *See* 20 C.F.R. § 404.1529(c)(2) ("We will not reject your statements about the intensity and persistence of your pain

12

or other symptoms . . . solely because the available objective medical evidence does not substantiate your statements."); *Harjo v. Astrue*, 336 F. App'x 810, 813 (10th Cir. 2009) (unpublished) (stating that it is reasonable to expect a long history of medical records to somewhere reflect the degree of debilitation caused by her impairments, so long as the ALJ does not rely solely or primarily on the absence of a physician's recommendation of work restrictions); *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (holding that the ALJ may consider that an impairment is somewhat controlled by medication or that a claimant is not currently taking prescribed medications)*; Thompson*, 987 F.2d at 1490 (quoting *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987)) (prohibiting ALJs from relying entirely on minimal daily activities as substantial evidence of non-credibility of pain testimony). Furthermore, all of the factors relied upon are supported by the record.

Griego faults the ALJ for relying on reports of improvements and missed or cancelled appointments from more than a year prior to her application, for relying on the lack of mention by a treating or examining doctor that Griego was disabled, and for failing to consider her GAF score, long work history, and extensive attempts to obtain pain relief. (Doc. 16 at 13-16.) However, these are not errors given the ALJ's reliance on several appropriate factors to discount her credibility. The ALJ is permitted to rely on reports of missed appointments that occurred since the alleged onset date. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citing *Diaz*, 898 F.2d at 777) ("The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment."). It is widely acknowledged that, when considering a claimant's daily activities, the ALJ must look at the specific activities performed and may not rely simply on generalities. *Krauser v. Astrue*, 638 F.3d 1324, 1332-33 (10th Cir. 2011). However, the ALJ did not rely on generalities here but rather on Griego and her father's testimony that she does housework

13

in her home and for her father and that she babysits her young grandchildren every day. Though the ALJ should also consider a claimant's prior work history in assessing her credibility, the ALJ need not when substantial evidence supports a finding that the claimant's pain is not disabling. *Campbell v. Barnhart*, 56 F. App'x 438, 441 (10th Cir. 2003) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)). Furthermore, the claimant's long work history ended in 2000 and then briefly continued in 2004, a long time before the alleged onset date.

The sole potential problem is the ALJ's failure to mention Griego's low GAF score, as determined by the SSA consulting psychologist, Dr. Wynne. There are certainly reasons to discount this score: it was given by one consultative psychologist at one point in time and the psychologist did not explain the reason for the GAF score or how it was obtained. Furthermore, it is recognized in this circuit that a low GAF score does not necessarily evidence disability. *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003) (unpublished); *Seymore v. Apfel*, 131 F.3d 152 (Table), No. 97-5068, 1997 WL 755386, at *2 (10th Cir. Dec. 8, 1997). It would be a better practice for the ALJ to specifically state the reasons for not crediting a GAF score of fifty or less in making the credibility determination, and this is something the ALJ may wish to address on remand. However, because of the numerous other bases for discounting Griego's credibility and because the ALJ's determination is supported by substantial evidence, this is not reversible error.

Griego also contends that the ALJ erred by giving little weight to the testimony of her father, Mr. Savedra. (Doc. 16 at 16-17.) In his decision, the ALJ stated that he considered the testimony and accorded it little weight on the bases that "it was not supported by the medical evidence of record and the natural basis of her father wanting to help her daughter." (AR 19.) An ALJ is not permitted to entirely disregard the testimony of a claimant's family and/or friends. 20 C.F.R. § 404.1529(c)(3);

14

20 C.F.R. § 404.1513(e)(2)(1991); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). In *Smolen*, the ALJ rejected the testimony of the claimant's family members on the basis that they were understandably biased and advocating for their relative. 80 F.3d at 1289. The Ninth Circuit held that this was not a valid basis to reject the testimony because this would be true of all family witnesses. *Id.* Here, though, the ALJ considered the affidavit but did not rely on it for two separate reasons. One alone, the relationship between father and daughter, may have been improper, but the relationship was not considered in isolation. The finding that the affidavit was inconsistent with the medical evidence supports the ALJ's decision to discount Mr. Savedra's affidavit.

### SUBSTANTIAL EVIDENCE FOR RFC FINDING

Griego complains that the ALJ found that she had a moderate limitation in social functioning that was unmentioned in his RFC finding. (Doc. 16 at 5.) She also complains that the ALJ's finding that she has a moderate impairment in concentration, persistence and pace was not sufficiently accounted for the conclusion in the RFC that she can "give attention and concentration up to 2 hours at a time with normal breaks." (Doc. 16 at 5.) The SSA argues that the ALJ did not err because the RFC is a separate administrative finding that is distinct from the determination of whether a claimant has a medically determinable impairment and the rating thereof. (Doc. 18 at 19-20.)

In at least one prior case, the Tenth Circuit took note when the ALJ found limitations at step three but did not include them in his later RFC determination. In that case, the Tenth Circuit described this as an inconsistency and stated that it "should be addressed on remand." *Frantz v. Astrue*, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007). There are several cases from other district courts in which the Commissioner's decision was reversed and remanded because the ALJ found that the claimant had moderate mental limitations but failed to address them either in the RFC or in the

15

hypothetical questions to the VE. *See, e.g.*, *Flores v. Astrue*, No. 09-cv-01360-PAB, 2010 WL 3894208, at *3 (D. Colo. Sept. 30, 2010) (reversing and remanding due to the ALJ's failure to mention a moderate concentration impairment in the RFC finding); *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 848-49 (E.D. Mich. 2007) (holding that it was error for the ALJ to find a moderate deficiency in ability to maintain concentration, persistence and pace and to fail to include that deficiency in the hypothetical posed to the VE).

A moderate impairment that is found by the state agency consultant or by the ALJ is not the equivalent of no impairment. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Accordingly, I find it hard to understand how the ALJ could conclude in one paragraph that Griego has moderate limitations in concentration, pace and persistence but fail to address how he determined that such an impairment only limits her ability to concentrate by requiring normal breaks. It is harder still to comprehend how a moderate limitation in social functioning could be completely omitted from the RFC without further discussion.

Of course, the assessment of an impairment and of a claimant's RFC are separate inquiries. *See* SSR 96-8p, 1996 WL 374184, at *3. Only where the mental impairment is identified as severe and only if it does not meet or equate to a listing is the RFC assessed. 20 C.F.R. §§ 404.1520a(d)(2)-(3), 416.920a(d)(2)-(3). Accordingly, to be considered in the RFC, the claimant must demonstrate that the limitations, alone or in combination with others, limit her mental ability to do basic work activities. *Pritchett v. Astrue,* 220 F. App'x 790, 792 (10th Cir. 2007) (unpublished) (citing *Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997)); *Hargis*, 945 F.2d at 1488 ("[O]nce a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment . . . ."). However, the ALJ at no point explained that these moderate limitations, in

combination with her other impairments, do not impact Griego's ability to do basic work activities.

For these reasons, the inconsistencies in the ALJ's opinion require that I reverse the Commissioner's decision and remand for further proceedings consistent with this Order. The ALJ need not reassess Griego's credibility, but he must reexamine these "moderate" limitations and either include them in the RFC or explain why they do not impact Griego's ability to work. It is also of note that the hypothetical question to the VE should include any psychological limitation. *Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, at *5 (10th Cir. 2005) ("Because the ALJ omitted, without explanation, impairments that he found to exist . . . , the resulting hypothetical question was flawed."). Because I reverse at this step, I may not consider Griego's arguments as to the step five determination.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion is GRANTED, the decision of the Commissioner is REVERSED, and the case is REMANDED to the agency.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge